Scott *v.* Turley.

WASHINGTON SCOTT *v.* W. H. TURLEY *et al.*

1. AGENCY. *Good faith to principal.* An agent who agrees to take the money of his principal and loan it to good parties, must loan it in fact; he cannot use the money himself, and pay the principal with the note of a third person based on a different consideration, without advising him of the facts.

2. SAME. *Repudiation by principal.* A principal, who receives from his agent the note of a third person under the belief that it belongs to him as his property, is not, upon a subsequent discovery of the facts and prompt repudiation, to be charged with the note because he did not sue upon it to the first terms of court held thereafter.

3. SAME. *Same. Inconsistent conduct. Departure in pleading unnoticed.* Where the principal, after receiving from the agent the note of a third person under a mistake of fact, recovers judgment upon the note and then files a bill thereon to reach equitable assets, and afterwards, upon discovering the truth, files an amended and supplemental bill in that cause, bringing the agent before the court, repudiating his act, and seeking to hold him individually liable for the debt, while insisting at the same time upon the relief sought in the original bill, and the agent answers to the merits, without objecting to the form of suit or setting up the defense of ratification by reason of the course pursued, the principal will be entitled to relief under the bill repudiating the act of the agent. The amended and supplemental bill filed under such circumstances is, in substance, an original bill upon a different cause of action, and if the defendant, without objection, goes to trial on the merits, must be treated as such.

---

FROM KNOX.

---

Appeal from the Chancery Court at Knoxville. W. B. STALEY, Ch.

CORNICK & CORNICK for complainant.

H. H. TAYLOR for respondents.

Scott *v.* Turley.

COOPER, J., delivered the opinion of the court.

The original and first amended and supplemental bills in this case were filed by Scott, as a judgment creditor of the defendant, W. H. Turley, upon a return of execution *nulla bona*, to reach the equitable interest of the debtor in certain real and personal assets in which the other defendants were interested. The second amended and supplemental bill made John B. Turley a party defendant and sought to reach property alleged to be in his hands belonging to the debtor. Before process issued on this bill, it was further amended by stating facts upon which the complainant claimed that John B. Turley was liable to him for the full amount of the debt on which he had recovered judgment against W. H. Turley. On final hearing, the chancellor dismissed the bills so far as they sought to hold John B. Turley liable as the principal debtor, but declared the complainant entitled to relief to the extent of the interest of W. H. Turley in certain equitable assets, and ordered accounts for the pur pose of ascertaining the extent of his interest. From this decree, the complainant, by leave of the chancellor, prayed and obtained an appeal before taking the accounts.

The principal contest is over the liability of the defendant John B. Turley directly to the complainant for the whole debt claimed. John B. Turley and W. H. Turley are brothers, and John B. Turley married the sister of the complainant, Scott. John B. Turley came to Knoxville about the year 1870, and Scott

Scott v. Turley.

seems to have followed him shortly afterwards, residing, when not absent on trips, which he appears frequently to have made, in the house of John B. Turley as a member of his family. Sometime towards the close of the summer of 1873, complainant, having $3,000 on deposit in a bank at Knoxville, and being about to leave the city for an uncertain period, entrusted the money to John B. Turley to loan for him. Turley himself says that he told complainant he would make it yield him *ten per cent per annum*, and agreed to take it and do with it just what he did with his own money. He repeats in his deposition: "The only agreement was that I was to take the money and loan it to good parties, and do with it just as I would with my own." He did loan the money to merchants at Atlanta on call at the rate of one per cent a month. It was recalled and paid into bank on December 20, 1873, to the credit of John B. Turley, and was drawn out by him on his checks for various sums between that date and February 26, 1874, the largest check being for $1,000 on January 8, 1874. He concedes that all of these checks, except the one last mentioned, were drawn for his own benefit, and the money used by him for his own purposes. His recollection is, he says, that he drew the money himself on the large check, and handed it to W. H. Turley in Francisco's store on Gay street, loaning it to him with the understanding that he was to pay *ten per cent interest*. On November 1, 1876, upon a settlement between the two brothers of some of their transactions, W. H. Turley gave John B. Turley his note for $3,267, and,

at the request of his brother, executed his note to the complainant at 90 days, with interest at the rate of *ten per cent* for $3,605. These notes were given for the balance of debt then found to be due from W. H. to John B. Turley.

The answer of the defendant, John B. Turley, contains the following statements: "It is true complainant was in Knoxville on divers occasions between August, 1873, and April, 1877, but as respondent remembers and believes he never once inquired about his money, or how it was secured. Respondent on several occasions mentioned the money to him, and told him, if he wanted it, he could at any time get it by calling for it, but he expressed no desire to call it in, and so the matter stood for nearly four years." Early in the month of April, 1877, the Commercial Bank of Knoxville, in which the complainant had a deposit of about $4,500, failed, and complainant called upon defendant, John B. Turley, for the money left in his hands. Thereupon, John B. Turley handed to him the note of W. H. Turley of November 1, 1876, for $3,605, as the form in which he then held it. The complainant took the note without comment.. He applied to W. H. Turley for the money, which he promised to pay at certain times designated. Not complying with his promises, complainant brought suit to the February term, 1878, of the court, and recovered judgment on October 8, 1878, for $4,304.12. The original bill was filed on December 6, 1878. The last amended and supplemental bill was filed July 9, 1880, upon the alleged recent discovery of the fact

that John B. Turley had never loaned to W. H. Turley any part of the complainant's money, and that the note of $3,605 was given for the pre-existing indebtedness of W. H. to John B. Turley. The recent discovery of the fact, if it be a fact, is not denied, nor does the defendant, John B. Turley, claim that· he did directly loan to the defendant, W. H. Turley, more than $1,000 of the complainant's money. And even the loan to this extent is expressly denied by W. H. Turley.

In the year 1871, John B. Turley loaned to W. H. Turley over $10,000, and early in 1874 the two entered into partnership in the business of a tannery. On November 1, 1876, they made a settlement of the loan transaction, by which W. H. Turley was brought in debt to John B. Turley in the sum of $5637.63. To this sum was added, according to John B. Turley, $1248.37, but according to W. H. Turley, $1234.37, and the two notes of that date, the one payable to John B. Turley, and the other to the complainant, were given for the gross sum. The sum of the two notes exactly corresponds with the figures as given by W. H. Turley, whose statement is doubtless the correct one. John B. Turley says that the sum added to the balance found in the loan transaction consisted of the $1,000 of complainant's money loaned by him to W. H. Turley on January 8, 1874, with interest at the rate of *ten per cent per annum*. W. H. Turley denies that John B. Turley ever loaned to· him any of complainant's money, and says that in their settlement John B. Turley claimed that the item in question was·

money of the complainant's used by him, John B. Turley, in the tannery business. And John B. Turley admits that the greater part of the complainant's money which he did use was used in that business. The testimony of the two brothers is, therefore, directly in conflict on this point. Neither is impeached, and it becomes important to ascertain which one is sustained by other evidence or by the circumstances. The burden of proof is on John B. Turley. He testifies that W. H. Turley, at the time of the alleged loan, said that he borrowed the money to pay a debt to the Masonic Lodge, and he introduces a witness who proves that W. H. Turley was a surety on a note to the Lodge, on which he had made several payments, both before and after January 8, 1874, and that he paid thereon, January 9, 1874, $397.35, the next nearest payment being three months thereafter. On the other hand, is the striking fact that the interest on the item of $1,000 included in the settlement falls short of the interest which would then have been due upon a loan of that amount on January 8, 1874, at the rate of *ten per cent per annum*, by the interest of over three months if we take the figures of John B. Turley, and of over five months if we take the obviously more correct figures of W. H. Turley. Moreover, John B. Turley admits the use of complainant's money in the tannery business, and might naturally, in a settlement with his brother, ask him to assume a part of the amount thus used. The weight of evidence is in favor of the version of W. H. Turley. At any rate, John B. Turley fails to

show satisfactorily a loan of any of complainant's funds. to W. H. Turley.

The question then is whether John B. Turley, after having made himself personally liable for the complainant's money by using it himself, instead of loaning it, can relieve himself by handing over to the complainant the note of a third person given for a pre-existing indebtedness to him, the agent, without laying before his principal all the facts? In his answer, John B. Turley assumes the position that as he was authorized to do with the complainant's money just what he did with his own, and as he had virtually loaned his own money to his brother by extending the time of payment, he might treat the complainant's money as loaned in the same way. His learned counsel has made no such argument. And it is obvious that an agent who agrees to take the money of his principal and "loan it to good parties," must loan it in fact. He cannot use the money of his principal himself, and then pay the principal with the note of his own debtor growing out of an independent transaction, without advising him of the fact. The utmost good faith is required between the parties occupying the fiduciary relation of principal and agent. It is equally clear that a principal, who receives the note of a third person from his agent under the belief that it belongs to him as his property, is not, upon a subsequent discovery of the facts and a repudiation of the act of the agent, to be charged with the amount of the note because he did not bring suit upon it to the first terms of court held thereafter. For that would be to reward.

the agent for his own wrong. In this case, the complainant was living at the house of John B. Turley, and acting, as the proof shows, with, if not under his advice. The pecuniary condition of his brother was probably known by John B. Turley, and certainly after January 2, 1878, when he took from him an assignment of all his personal effects.

The point relied upon by the counsel of John B. Turley, and upon which the chancellor dismissed the bill so far as it sought to charge him individually, is that the complainant, by his conduct, ratified the acts of the agent after he became aware of all the facts. The counsel insists that in the very bill seeking to charge his client personally, the complainant is also pursuing his remedy against W. H. Turley. And the fact is undoubtedly so, whether the conclusion sought to be deduced by the counsel is correct or not. The complainant, in his final *addendum*, prays for the same relief as prayed for in the previous bills, "and for all other and necessary relief." And the entire cause has been since prosecuted as if the complainant was entitled to relief as a judgment creditor of W. H. Turley, as well as relief against John B. Turley individually. During the progress of the suit, one piece of property sought to be reached by the original bill after satisfying prior liens, was sold, and the surplus proceeds of sale over the prior lien debts were paid into court, and, on complainant's motion, paid out to him or his counsel. The case is one, therefore, where the complainant, while expressly repudiating the act of his agent in his last bill, and seeking direct relief against

him, is also, upon the previous proceedings enforcing the rights acquired under the act which he is repudiating. We have the anomaly of antagonistic rights being prosecuted in the same suit.

This anomaly grows out of the neglect of the settled rules of chancery pleading and practice. The *addendum,* as I have called it, to the second amended and supplemental bill, is, in substance, an original bill, based upon an entirely different cause of action from that of the other bills of the series. It was what in common law pleading would be called a departure from the party's case, and for that reason clearly demurrable: *Williams* v. *Winans,* 5 C. E. Green, 392; Sto. Eq. Pl., sec. 339, 616. But no demurrer was filed. The defendants, John B. and W. H. Turley, who were the only proper parties to the last bill, the latter upon the averments tending to show collusion between the brothers, filed their answer, in which they make no allusion to the defense now relied on. John B. Turley has tacitly acquiesced in the complainant's claim to double relief.

The general rule undoubtedly is that a principal, in order to hold his agent liable, must promptly, upon the facts coming to his knowledge, repudiate the act, and notify the agent that he looks to him for his money; and that if the principal, after knowledge of the act, avail himself of its advantages, he will be bound by it: *Walker* v. *Walker,* 7 Baxt., 260; S. C. 5 Heis., 425; *Williams* v. *Storm,* 6 Cold., 203; *Fort* v. *Coker,* 11 Heis., 579. A qualification of these general rules, in proper cases, is that acts of ratification

to be sufficient must be something by which a party, by relying on them, has been prejudiced: *Doughaday, v. Crowell*, 3 Stockt., 201. And the rules themselves can scarcely apply when the principal has already repudiated his agent's act by suit.

In the case before us, the principal, in ignorance of the truth, had proceeded, upon the basis of the validity of the act, to recover judgment upon the note received from the agent, and to enforce the execution of the judgment out of the equitable assets of the debtor; and then, when advised of the truth, in the same suit brings in the agent, expressly repudiates the act, and asks for relief against him. While he is pressing his suit against the agent, he is also, the agent not objecting, striving to collect the judgment. If he had filed, as proper practice required, an independent original bill against the agent, which the latter had answered without setting up the defense of ratification, it is clear that no evidence would have been admissible of acts of ratification. Can the rule be different where, without objection, the litigation is embodied in the same suit, and no defense of ratification is made by the agent? The court must presume, in such case, that the original litigation is continued for the benefit of the agent. The principal has promptly, upon acquiring knowledge of the facts, by direct legal proceedings, notified the agent that he repudiates his act, and looks to him for redress, and has continuously pressed his suit. This was an election to repudiate, enforced at once by suit. What he had previously done was in ignorance of his rights. What he may

have subsequently done could not avoid the repudiation, and must be treated as done for the benefit, and with the consent of the agent. The latter cannot be prejudiced by it, for if complainant fails to reach equitable assets, he alone is liable for costs, and if he realizes anything it will enure to the benefit of the defendant. And the latter, if held personally liable, will be entitled to be subrogated to the benefit of the judgment and proceedings thereon, and to an assignment thereof upon payment of the recovery had against him. The chancellor erred in not giving complainant the relief sought against John B. Turley.

The chancellor granted the complainant all the relief he was entitled to, unless it may be in the matter of the Cocke land, bought by John B. Turley, but, in view of the liability of John B. Turley for the entire debt of the complainant, it is unnecessary to consider that branch of the case.

The decree will be reversed so far as it dismissed the bill seeking relief against John B. Turley individually, and a decree will be rendered in favor of the complainant against the defendant, John B. Turley, for the amount of the W. H. Turley note, treated as the amount of complainant's money then in his hands, with interest at the rate of *six per cent per annum*, or, at the option of the complainant, with the money of the complainant which came to his hands, with interest at the rate of *six per cent per annum* from the date of the conversion. The chancellor's decree will be in other respects affirmed. The defendant, John B. Turley, will be entitled to the benefit of any collec-

tions made from W. H. Turley by having the same credited on the decree now rendered against him, and to an assignment of the judgment against W. H. Turley, and all rights then attached to it, upon payment of complainant's decree now rendered. The defendant, John B. Turley, will pay the costs of this court, the costs of the court below to await the coming in of the reports ordered.

### PETITION TO REHEAR.

The petition for rehearing suggests that the opinion overlooks the testimony of both Scott and Turley to the effect that in June or July, 1876, Turley notified Scott that the money was ready for him, and that Scott told him to count up the interest, and keep it loaned as long as it was all right. The opinion does not. undertake to set out all the evidence, nor did the judge who prepared the opinion overlook the particular evidence. It could not possibly change the admitted fact that all of the consideration of the W. H. Turley note to Scott, unless it be the $1,000 item with interest, was an old debt of W. H. to John B. Turley.

The evidence bearing upon the $1,000 item, although not referred to by counsel in his original brief, was not overlooked by the court. The memory of W. H. Turley was doubtless in fault as to time of payment of the note of the Masonic Lodge. The memory of John B. Turley is no better in several instances disclosed by the record. The bank account of .

Scott *v.* Turley.

W. H. Turley on the 8th of January, 1874, cuts both ways, for it shows no deposit of any sum borrowed on that day. The evidence referred to is insufficient to change the conclusion reached.

The opinion holds that Scott is not liable for any loss occasioned by his treating the note as his property in ignorance of the facts, especially as he was acting with, if not under the advice of defendant.

No new argument or authority is presented on the question of ratification, which was carefully considered before the opinion was delivered.

We do not think Scott is entitled, after being allowed to repudiate the act of his agent, and to hold him liable for the whole debt, to pursue so much of the other parts of the suit as sought to reach property in his hands in which W. H. Turley had an interest. The prosecution of the suit so far as it sought to reach other property of W. H. Turley was sustainable as being for the interest of John B. Turley.

The petitions are therefore disallowed.